IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ALL AMERICAN SECURITY CORP.,<br><br>                    Plaintiff,<br><br>v.<br><br>BOREALIS MINING COMPANY, LLC,<br>fka BOREALIS MINING COMPANY,<br>INC.,<br><br>                    Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Case No. 2:15-cv-00582<br><br>District Judge Dee Benson |

Defendant Borealis Mining Company, LLC (Borealis) has motioned for the Court to dismiss the above captioned case pursuant to Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure for lack of personal jurisdiction and improper venue. (Dkt. No. 6.) On December 10, 2015, the Court heard oral argument on the motion. At the hearing, Borealis was represented by Matthew Brahana. Plaintiff All American Security Corp. (All American) was represented by Jeffrey Price. At the conclusion of the hearing, the Court took the motion under advisement. Now being fully advised, the Court renders the following Memorandum Decision and Order.

## BACKGROUND

In reviewing the factual background of this case, the Court is mindful All American bears the burden of asserting a prima facie case of personal jurisdiction and "any factual disputes in the parties' affidavits must be resolved in [All American's] favor." *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (citations omitted).

Borealis is a Nevada limited liability company with its principal place of business in Carson County, Nevada.  (Dkt. No. 2, ¶ 2.)  All American is a Utah corporation with its principal place of business in Utah County, Utah.  (*Id.* at ¶ 1.)

Borealis is in the business of operating and managing a gold mining operation owned by Gryphon Gold Company, located in Hawthorn, Nevada.  (*Id.* at ¶ 5; Dkt. No. 6-3.)  In 2010, Lt. Toney Petche, a representative of All American, visited the Gryphon Gold mining site to offer security services to Borealis.  (Dkt. No. 2 at ¶ 6; Dkt. No. 11, Dec. of William Corry, p. 2, ¶¶ 4–8.)  Prior to October 20, 2010, John L. Key, a representative of Borealis, contacted All American to request a price quote for All American's security services.  (Dkt. No. 11, Dec. of William Corry, ¶ 5.)  On June 20, 2011, after an exchange of email and telephone correspondence, All American and Borealis entered into two written contracts whereby All American was to provide security services at the Gryphon Gold mining site.  (Dkt. No. 2 at ¶ 7, Ex. A.)

 From June 2011 to February 2012, All American provided Borealis security services at the Gryphon Gold mining site.  (Dkt Nos. 6-1, ¶ 9 and 6-3.)  On January 12, 2012, Borealis notified All American that it intended to terminate its contracts with All American effective February 1, 2012.  (*Id.* at ¶ 10.)  All American alleges that Borealis's termination constituted a breach of contract.  (*Id.* at ¶¶ 11, 12.)

Further, All American alleges that on or about January 12, 2012, Borealis began "soliciting and enticing [All American's] employees to leave employment with [All American] and accept employment with [Borealis]."  (*Id.* at ¶ 14.)  All American alleges that Borealis tortuously interfered with All American's business relations by actively soliciting All American's employees.  (*Id.* at ¶ 20.)  Further, All American alleges that Borealis's tortious

contact caused a devastating financial loss to All American's business.  (*Id.* at ¶¶ 27–31; Dkt.

No. 11, Dec. of William Corry, ¶ 20.)

## DISCUSSION

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may move

the Court to dismiss a case in its entirety for lack of personal jurisdiction.  Similarly, Rule

12(b)(3) permits the Court to dismiss or transfer a case where venue is improper.  The Court

finds that Borealis lacks sufficient minimum contacts with Utah; therefore, the Court cannot

assert personal jurisdiction over Borealis.  Further, because the Court lacks personal jurisdiction

over Borealis, the Court declines to examine whether the District of Utah is the proper venue for

this litigation.

### Personal Jurisdiction

When the Court considers a motion to dismiss for lack of personal jurisdiction without

conducting an evidentiary hearing, "the plaintiff need only make a prima facie showing of

personal jurisdiction to defeat the motion."  *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149

F.3d 1086, 1091 (10th Cir. 1998) (citations omitted).  "The plaintiff may make this prima facie

showing by demonstrating, via affidavit or other written materials, facts that if true would

support jurisdiction over the defendant.  In order to defeat a plaintiff's prima facie showing of

jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of

some other considerations would render jurisdiction unreasonable.'"  *Id.* (citing *Burger King*

*Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

Before this Court can assert personal jurisdiction over a defendant, the Court must

determine "'(1) whether the applicable [state long-arm] statute potentially confers jurisdiction by

authorizing service of process on the defendant and (2) whether the exercise of jurisdiction

comports with due process.'"  *Klein v. Cornelius*, 786 F.3d 1310, 1317 (10th Cir. 2015) (quoting

*Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000)).  Utah's long-

arm statute is "coterminous with the Due Process Clause"; therefore, the Court need only

"conduct a single inquiry" into whether Borealis's contacts with Utah satisfy due process.

*Yellowbear v. Ashe*, 612 Fed. App'x 918, 921 (10th Cir. 2015); *see* Utah Code Ann. §§ 78B-3-

205, 78B-3-201(3); *Pohl, Inc. of Am. v. Webelhuth*, 201 P.3d 944, 951 (Utah 2008) (citations

omitted) (holding, "'any set of circumstances that satisfies due process will also satisfy [Utah's]

long-arm statute'").

## A. Due Process Analysis

Depending on the nature and extent of the defendant's contacts with the forum, the Court

may exercise general or specific personal jurisdiction. *See Yellowbear*, 612 Fed. App'x at 921.

All American does not challenge Borealis's assertion that the Court lacks general personal

jurisdiction over Borealis.  (Dkt. No. 11, p.6, n.4.)  Therefore, the Court will only consider

whether the Court can exercise specific personal jurisdiction over the Borealis.  The Court's

specific personal jurisdiction inquiry is two-fold.  First, the Court must determine whether

Borealis has such "minimum contacts" with the forum state "that [it] should reasonably

anticipate being haled into court there."  *World-Wide Volkswagen Corp. v. Woodson*, 4444 U.S.

286, 291, 297 (1980).  Second, if Borealis's contacts are sufficient, the Court must then consider

whether the exercise of personal jurisdiction over Borealis would offend "'traditional notions of

fair play and substantial justice.'"  *Id.* (quoting *International Shoe Co. v. Washington*, 326 U.S.

310, 316 (1945)).

## I. Minimum-Contacts Inquiry

"[T]he Supreme Court has instructed that the 'minimum contacts' standard requires, first, that the out-of-state defendant must have 'purposefully directed' its activities at residents of the forum state, and second, that the plaintiff's injuries must 'arise out of' defendant's forum-related activities."  *Dudnikov*, 514 F.3d at 1071 (citing *Burger King Corp.*, 471 U.S. at 472). The minimum contacts inquiry is context specific.  In the tort context, the Court asks "whether the nonresident defendant 'purposefully directed' its activities at the forum state."  *Id.*  Similarly, in contract cases, the Court asks "whether the defendant 'purposefully availed' itself of the privilege of conducting activities or consummating a transaction in the forum state."  *Id.* (citations omitted).  Importantly, mere "random, fortuitous, or attenuated contacts" with the forum is not enough to establish personal jurisdiction.  *Burger King Corp.*, 741 U.S. at 475 (internal citations and quotation marks omitted).

As a preliminary matter, Borealis's contract with a Utah corporation, "standing alone", is insufficient to satisfy the minimum contacts inquiry.  *See Benton v. Cameco Corp.*, 375 F.3d 1070, 1077 (10th Cir. 2004) ("A contract between an out-of-state party and a resident of the forum state cannot, standing alone, establish sufficient minimum contacts with the forum."). This is especially true where the performance of the contract occurs outside the forum state.  *See, e.g.*, *G & G Int'l, LLC v. Camsing Co.*, No. 09-cv-00366, 2010 WL 466812, at *4 (D. Colo. Feb. 9, 2010) (finding the defendant lacked minimum contacts with the Colorado the court noted, "[Defendant] undoubtedly entered into a contract with a Colorado resident, and engaged in communications and contacts with Colorado that one might reasonably expect when servicing such a contract. But it is equally clear that nothing in that contract called for any performance to

occur in Colorado"). Therefore, the Court will consider whether the contract, in addition to Borealis's alleged tortious conduct, is sufficient to satisfy due process.

In this case, All American attempts to satisfy the purposeful direction standard by invoking the "effects test" as set forth by the United States Supreme Court in *Calder v. Jones*, 465 U.S. 783, 789–90 (1984). Specifically, All American suggests there are three categories of contacts that satisfy the minimum contacts inquiry: (1) email and telephone correspondence between the parties, including, Borealis reaching out to All American for security services; (2) Borealis's contract with a Utah corporation; and (3) the fact that the effect of Borealis's alleged tortious conduct was felt in Utah. (Dkt. No. 11, p. 7–10.)

To find purposeful direction under *Calder*, the Tenth Circuit requires the plaintiff to establish three elements: "(1) [an] intentional action, (2) express aiming at the forum state, and (3) knowledge that the brunt of the injury would be felt in the forum state." *Newsome v. Gallacher*, 722 F.3d 1257, 1268 (10th Cir. 2013) (citing *Dudnikov*, 514 F.3d at 1072). Importantly, "the mere allegation that an out-of-state defendant  . . . has committed . . . business torts that have allegedly injured a forum resident does not necessarily establish that the defendant possesses the constitutionally required minimum contacts." *Far W. Capital, Inc. v. Towne*, 46 F.3d 1071, 1080 (10th Cir. 1995).

### i. Intentional Action

To establish purposeful direction, All American must show that Borealis acted intentionally. *Newsome*, 722 F.3d at 1269; *Niemi v. Lasshofer*, 770 F.3d 1331, 1348 (10th Cir. 2014.) All American has sufficiently alleged that Borealis's actions were intentional and tortious. All American alleges that on or about January 12, 2012, Borealis began "soliciting and enticing [All American's] employees to leave employment with [All American] and accept

employment with [Borealis]."  (Dkt. No. 2, ¶ 14.)  Further, All American alleges that by enticing All American's employees to leave their employment with All American, Borealis intentionally interfered with All American's business relations, causing All American damages.  (*Id.* at ¶¶ 27–31.)  Therefore, All American has satisfied the first *Calder* element.

### ii. Expressly Aimed at Utah

The express aiming element requires Utah to have been the "focal point" of the defendant's conduct.  *Far W. Capital*, 46 F.3d at 1080.  All American cannot establish sufficient minimum contacts by merely alleging that Borealis directed its conduct towards a known Utah resident.  *Walden v. Fiore*, 134 S. Ct. 1115, 1123 (2014); *Dudnikov*, 514 F.3d at 1077.  "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State."  *Walden*, 134 S. Ct. at 1123 (quoting *Burger King Corp.*, 471 U.S., at 475).  Indeed, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."  *Id.* at 1125.  The Court finds the Tenth Circuit's opinion in *Far West Capital, Inc. v. Towne*, 46 F.3d 1071 (10th Cir. 1995) to be instructive as to whether All American has properly alleged that Borealis's conduct was expressly aimed at Utah.

In *Far West Capital*, the plaintiff, a Utah corporation, alleged the defendants breached their contract with the plaintiff and committed several business torts in relation to a mineral rights dispute in Nevada.  *Far W. Capital*, 46 F.3d at 1073–74.  The plaintiff argued that personal jurisdiction over the defendants was proper in Utah because of the flow of mail and telecommunications between the defendants and Utah, the defendants' retention of an agent in Utah, the location of the defendants' escrow account in Utah, and the intentional business torts

7

committed against a Utah corporation.  *Id.* at 1074.  The Tenth Circuit rejected the plaintiff's

argument finding that "the focal point of this relationship was Nevada rather than Utah."  *Id.* at

1080.  Focusing on the contract between the parties, the court noted that the contract was

negotiated in Nevada, was to be performed in Nevada, utilized Nevada resources, and was

expressly governed by Nevada law. *Id.* at 1077, 1080.  Additionally, the "allegedly tortious acts

all involve disputes about rights under a series of Nevada-centered agreements."  *Id.* at 1080.

The court concluded that there was "no evidence that defendants' alleged torts had any

connection to Utah beyond plaintiff's corporate domicile." *Id.*

Just like *Far West Capital*, there is no evidence to suggest Borealis's alleged wrongful

conduct had any connection to Utah beyond All American's corporate domicile.  The contracts

between Borealis and All American are likely governed by Nevada law,[1] the contracts utilized

Nevada resources, and the contracts were performed exclusively in Nevada.  (Dkt. No. 2 at ¶ 7,

Ex. A.)  Furthermore, Borealis's alleged "tortious acts" involved disputes about business

relationships located in Nevada.  Specifically, All American contends that Borealis interfered

with All American's relationships with its employees performing services in Nevada.  (Dkt. No.

2, ¶ 14.)  Borealis's alleged tortious conduct was not expressly directed at Utah; rather Borealis's

---

[1]  The contracts between Borealis and All American do not contain choice-of-law provisions.
(Dkt. No. 2, Ex. A.)  "[I]f the [C]ourt has determined that [a] matter is substantive, then it looks to the
substantive law of the forum state, including its choice of law principles, to determine the applicable
substantive law." *Boyd Rosene and Assoc., Inc. v. Kansas Mun. Gas Agency*, 174 F.3d 1115, 118 (10th
Cir. 1999).  Utah courts apply the Restatement (Second) of Conflict of Laws § 188 or the significant
relationship test to determine which law governs a contract.  *One Beacon Am. Ins. Co. v. Huntsman
Polymers Corp.*, 2012 UT App 100,¶ 28, 276 P.3d 1156.  To determine which state has the most
significant relationship with a contract, the Court analyzes: "(a) the place of contracting, (b) the place of
negotiation of the contract, (c) *the place of performance*; (d) *the location of the subject matter of the
contract*; and (e) the . . . place of incorporation and place of business of the parties."  Restatement
(Second) of Conflict of Laws § 188(2) (emphasis added).  Although it is unnecessary for the Court to
determine choice of law issues on a rule 12(b)(2) motion, the Court finds it relevant that it is likely
Nevada law applies to the contracts between Borealis and All American.  *See Burger King Corp.*, 47 U.S.
at 483 (noting that choice-of-law provisions should not be ignored when considering whether the
defendant has purposefully availed itself of the benefits and protections of a state's laws).

alleged conduct was directed at "Nevada centered agreements" between All American and its Nevada employees. "There is no indication that Utah had anything but a fortuitous role in the parties' past dealing or would have any role in their continuing relationship." *Far W. Capital*, 46 F.3d at 1080. Therefore, the Court finds that All American has failed to establish Borealis's conduct was expressly aimed at Utah.

### iii. Knowledge of the Location of the Injury

The Tenth Circuit has noted that the third element of the *Calder* test is outcome dependent on the first and second *Calder* elements. Specifically, knowledge that injury will be felt in the forum state alone is insufficient to establish purposeful direction. *Dudnikov*, 514 F.3d at 1077. "[U]nder the *Calder* test[,] plaintiffs . . . must establish . . . not only that defendants foresaw (or knew) that the effects of their conduct would be felt in the forum state, but also that defendants undertook *intentional actions that were expressly aimed at that forum state*." *Id.* (emphasis in original). As noted above, All American has failed to establish Borealis's conduct was expressly aimed at Utah; therefore, the Court finds it irrelevant that Borealis could have foreseen its alleged tortious acts would cause injury in Utah. *See Far W. Capital*, 46 F.3d at 1080 (noting that the plaintiff suffering the "financial effects" of tortious conduct in the forum is insufficient to satisfy the minimum contacts inquiry).

In sum, the Court finds that Borealis lacks sufficient minimum contacts such that the Court may exercise personal jurisdiction over Borealis. Because All American has failed to clear the minimum contacts hurdle, it is unnecessary for the Court to evaluate the other requirements of specific personal jurisdiction.

**Venue**

The Court lacks personal jurisdiction over Borealis; therefore, the Court declines to determine whether the District of Utah is the proper venue for this litigation.  *See Walden*, 134 S. Ct. at 1121, n.5 (declining to address venue after finding the district court lacked personal jurisdiction over the defendant).

**CONCLUSION**

All American's case is dismissed without prejudice pursuant to Rule 12(b)(2) for lack of personal jurisdiction.  Borealis's Motion to Dismiss is GRANTED.

Dated: December 29, 2015.

BY THE COURT:

_____
Dee Benson
United States District Judge

10